UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- X
```

SPENCER BIEN-AIME,                                  :
                                                    :
                                    Plaintiff,      :
                                                    :     15-CV-1485 (VEC)
                     -against-                       :
                                                    :     OPINION & ORDER
EQUITY RESIDENTIAL; MR. RUDY SEC;                   :
AND MS. ANJE,                                       :
                                                    :
                                    Defendants.  :

```
-------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/22/2017

VALERIE CAPRONI, United States District Judge:

In this employment discrimination action, Plaintiff Spencer Bien-Aime, proceeding *pro se*, alleges violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq*., New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq*., and New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8 *et seq*. Defendants Equity Residential Services, LLC ("Equity"), Rudolf Sec ("Sec"), and Antjie Eichinger ("Eichinger") (collectively, "Defendants") move for summary judgment.[1] Notice of Motion for Summary Judgment, Dkt. 31. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

From February 2013 until May 2014, Bien-Aime worked for Equity as a groundskeeper/porter at the Westmont, a residential apartment building in Manhattan.

---

[1] Sec was incorrectly pleaded as "Mr. Rudy Sec" and Eichinger was incorrectly pleaded as "Ms. Anje" in the Complaint.

[2] The facts are taken from the discovery submitted in connection with this motion. Because this is a motion for summary judgment, the facts are considered in the light most favorable to Plaintiff. *See Noon v. Int'l Bus. Machs.*, No. 12 CIV. 4544 CM FM, 2013 WL 6504410, at *1 n.1 (S.D.N.Y. Dec. 11, 2013).

Declaration of Ivan R. Novich, Esq., in Support of Defendants' Motion for Summary Judgment ("Novich"), Ex. A ("Pl. Tr.") at 92:2–8, Dkt. 33; Novich Ex. B at D-0001, D-0005; Declaration of Rudolf Sec ("Sec Decl.") ¶ 3, Dkt. 34.  The groundskeeper position requires an "[a]bility to perform numerous physical activities that require considerable use of [the employee's] hands, arms and legs and moving [the employee's] whole body, including . . . kneeling."  Novich Ex. B. at D-0006.[3]  While he was employed at the Westmont, Bien-Aime reported to Sec, who was the Superintendent at the Westmont.  Pl. Tr. at 104:17–25; *see* Sec. Decl. ¶¶ 1, 3.  Sec, in turn, reported to Eichinger, who was the General Manager at the Westmont.  Pl. Tr. at 106:22–24; Sec Decl. ¶ 2.

 In February 2014, Bien-Aime's knees became visibly swollen.  Pl. Tr. at 109:16–17, 110:3–11.  At the time, Bien-Aime did not provide Equity with any medical documentation regarding his knees, nor did Bien-Aime request any accommodation.  Pl. Tr. at 110:20–111:1.  Although Sec and Eichinger did not prohibit Bien-Aime's use of a knee brace prescribed by his doctor, Bien-Aime did not wear the brace at work.  Pl. Tr. at 119:1–15.

Sec provided Bien-Aime with a pair of knee pads.  Pl. Tr. at 110:14–16, 123:10–13.  Bien-Aime wore the knee pads even while he was not working on his knees because they alleviated his pain.  Pl. Tr. at 110:16–19.  Because the knee pads were "old" and "dirty" and Sec received at least one tenant complaint regarding Bien-Aime's appearance, Sec asked Bien-Aime to wear the knee pads only when he was working on his knees or to wear the new, clean pair of knee pads that Equity had provided him.  Sec Decl. ¶ 5.  Bien-Aime explained to Sec and Eichinger that the knee pads helped to alleviate his pain even if he was not kneeling.  Pl. Tr. at

---

[3]     The responsibilities of a groundskeeper include: gathering and disposing of litter and debris; sweeping and maintaining driveways, parking lots, and other public areas; maintaining the ground equipment; and moving heavy objects and operating machinery such as lawnmowers and hedge-trimmers.  Novich Ex. B. at D-0005.

116:22–118:11.  Although Plaintiff testified that Eichinger and Sec threatened to write him up and fire him if he continued to wear the old knee pads, he admitted that they allowed him to wear knee pads while performing tasks that required kneeling.  Pl. Tr. at 118:10–13, 119:16–19.

In April 2014, Bien-Aime filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging disability discrimination in violation of the NYSHRL.  Novich Ex. E at D-0045.  Bien-Aime alleged that Equity discriminated against him when Sec and Eichinger told him that he could not wear the knee pads.  Novich Ex. E at D-0046.  After receiving notice of the NYSDHR complaint, Sarah Khu, Equity's Human Resources Director, informed Bien-Aime that he could continue wearing the knee pads and that Sec and Eichinger had a new pair of the same knee pads for Bien-Aime's use.  Novich Ex. F; Pl. Tr. at 121:11–123:13.  Khu clarified that Bien-Aime was not expected to kneel while cleaning apartments, and Sec and Eichinger provided Bien-Aime with tips on cleaning methods that did not involve kneeling.  Novich Ex. F.; Pl. Tr. at 124:10–125:1.  Moreover, Equity reassigned the task of cleaning of the building's elevator tracks, which required kneeling, from Bien-Aime to another employee.  Novich Ex. F; Pl. Tr. at 124:5–9.

Bien-Aime asserts that Eichinger and Sec retaliated against him for filing the NYSDHR complaint.  Pl. Tr. at 137:17–138:2, 138:18–25.  As evidence of retaliatory conduct, Bien-Aime states that Eichinger "stopped saying good morning" to him and that Sec talked to Bien-Aime "totally differently" and without a "warm welcome" in his voice.  Pl. Tr. at 143:18–144:22, 147:17–148:1, 157:2–8.  When asked for a specific example of Sec's retaliatory conduct, Bien-Aime stated that Sec wrote Bien-Aime a work-assignment order and gave the order to a co-worker to give to Bien-Aime.  Pl. Tr. at 146:17–147:12.  Sec also "wanted to know every minute where [Bien-Aime] was," even though Sec previously had not monitored Bien-Aime's work that closely.  Pl. Tr. at 139:7–8, 144:4–5, 152:19–153:1.  Sec also spoke with Bien-Aime about two

3

instances in which Bien-Aime incurred 15 minutes of overtime without Sec's prior approval, but

he did not discipline Bien-Aime for working overtime.[4]  Pl. Tr. at 139:20–143:17; Sec Decl. ¶ 9.

Bien-Aime testified that after he filed the NYSHDR complaint, Sec and Eichinger

"talked to [him] like [he] was a criminal."  Pl. Tr. at 177:22–24.  During that particular

conversation, Sec told Bien-Aime that he had reworked the schedule to reassign job

responsibilities that required kneeling to other employees in light of Bien-Amie's knee problems.

Pl. Tr. at 150:14–15, 151:11–20, 177:21–179:10.  Bien-Aime asserts that Sec and Eichinger were

looking for "an excuse to fire [him]."  August 8, 2016, Letter ("Opposition" or "Opp."), at 2,

Dkt. 37.  The undisputed record reflects, however, that Bien-Aime was not fired, his schedule

was not restructured, and his hours, benefits, job title, and pay at Equity did not change.  Pl. Tr.

at 151:5–7, 157:9–21.  In May 2014, Bien-Aime filed a second complaint with the NYSHDR,

this time alleging retaliation.  Novich Ex. G.

In May 2014, Bien-Aime took a voluntary leave of absence.  Pl. Tr. at 92:6–18; Sec

Decl. ¶ 10.  Bien-Aime's doctor provided Equity with a note stating that Bien-Aime was

"experiencing severe pain" in performing tasks that required kneeling and opining that Bien-

Aime "should not return to work at this time."  Novich Ex. K.  Bien-Aime was given 12 weeks

of Family Leave Medical Act ("FMLA") leave.  Pl. Tr. at 158:12–16; Novich Ex. L.  After Bien-

Aime's FMLA leave expired, Equity voluntarily extended his leave for more than two years.  Pl.

Tr. at 159:1–11.  Bien-Aime still is "not able to work" because of the pain in his knees.[5]  Pl. Tr.

at 159:18–22, 161:15–17.  Bien-Aime has not returned to work at Equity, nor has he sought other

---

[4]        Equity requires that managers pre-approve overtime work.  Pl. Tr. at 142:24–143:1.

[5]        As of March and June 2015, Bien-Aime's physician stated that Bien-Aime was continuing to experience
issues with his knees but opined that knee surgery would allow him to "return to gain full employment."  Novich Ex.
H.

4

employment.  Pl. Tr. at 160:19–161:17.  To date, Bien-Aime remains an employee at Equity, albeit on a leave of absence.  Pl. Tr. at 158:17–22.

In October 2014, the NYSDHR dismissed Bien-Aime's first NYSDHR complaint, finding that there was not probable cause to believe that Equity had discriminated against him.  Novich Ex. I.  The next month, the NYSDHR dismissed the second NYSDHR complaint, finding that there was not probable cause to believe that Equity had retaliated against Bien-Aime for filing a complaint with the NYSDHR.  Novich Ex. J.  Bien-Aime did not appeal either of the NYSDHR's "No Probable Cause" determinations.  Instead, after receiving right-to-sue letters, Bien-Aime filed this federal action.  Asserting claims under the ADA, NYSHRL, and NYCHRL, Bien-Aime alleges that Equity discriminated against him by failing to accommodate his disability and retaliated against him for complaining about the discrimination.  Complaint for Employment Discrimination ("Compl."), at 2–3, Dkt. 2.  Defendants move for summary judgment.[6]

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[6]      In the Opposition, Bien-Aime asserts that he "was discriminated by [Sec and Eichinger] because I am a black period."  Opp. at 2.  Bien-Aime, however, did not allege race discrimination in the Complaint, and, when asked during his deposition, Bien-Aime testified that he was complaining only about disability discrimination.  Pl. Tr. at 137:4–16.

In addition, although Bien-Aime did not assert a federal age discrimination claim on page 1 of his *pro se* Complaint, on page 3 he checked a box indicating that his employer had discriminated against him based on his age.  To the extent that Bien-Aime intended to allege claims of age discrimination in violation of the NYSHRL and NYCHRL, those claims may be barred by the election of remedies for the reasons discussed herein, but even if they were not, Bien-Aime makes absolutely no arguments regarding age discrimination and has adduced no facts that would give rise to an inference of age discrimination.  *See Stavis v. GFK Holding, Inc.,* 769 F. Supp. 2d 330, 337 (S.D.N.Y. 2011) (elements of a prima facie case of age discrimination).  Moreover, as noted above, during his deposition, he affirmatively disclaimed any sort of discrimination other than disability discrimination.  Pl. Tr. at 137:4-16.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial."  *Scott v. Harris,* 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal quotation marks

omitted)).  Courts "construe the facts in the light most favorable to the non-moving party and

resolve all ambiguities and draw all reasonable inferences against the movant."  *Delaney v. Bank*

*of Am. Corp.,* 766 F.3d 163, 167 (2d Cir. 2014) (*per curiam*) (quoting *Aulicino v. N.Y.C. Dep't v.*

*Homeless Servs.,* 580 F.3d 73, 79–80 (2d Cir. 2009) (alteration omitted)).

    The non-moving party, however, "must do more than simply show that there is some

metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or

unsubstantiated speculation." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005)

(citations and internal quotation marks omitted).  Rather, the nonmoving party must come

forward with "specific facts showing that there is a genuine issue for trial."  *Sista v. CDC IXIS N.*

*Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006) (citation omitted).  "[I]f the evidence is such that a

reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment

must be denied.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

    In the context of employment discrimination cases, the Second Circuit has noted that "an

extra measure of caution is merited" when considering a motion for summary judgment "because

direct evidence of discriminatory intent is rare and such intent often must be inferred from

circumstantial evidence found in affidavits and depositions."  *Schiano v. Quality Payroll Sys.,*

*Inc.,* 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted).  Nonetheless, it is "beyond cavil that

---

To the extent Bien-Aime is attempting to now allege race or age discrimination, it is simply too late.  Bien-Aime cannot raise new claims on summary judgment that were disclaimed during discovery.  *See Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013).

summary judgment may be appropriate even in the fact-intensive context of discrimination cases," *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001), and "trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524 (1993)). Thus, summary judgment remains available in cases alleging employment discrimination if there are no genuine issues of material fact. *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 40 (2d Cir. 1994). And, even in the employment discrimination context, a plaintiff must do more than advance conclusory allegations to defeat a motion for summary judgment. *Aspilaire v. Wyeth Pharm., Inc.,* 612 F. Supp.2d 289, 302 (S.D.N.Y. 2009) (citing *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997)).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation marks and citation omitted). Courts are required to give *pro se* submissions "special solicitude," *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994), because "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman*, 470 F.3d at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

I.   **NYSHRL and NYCHRL Claims**

The NYSHRL and NYCHRL provide two alternative paths for complaints of unlawful discrimination: an administrative action, which is commenced with the NYSDHR or New York City Commission on Human Rights ("NYCCHR"); or a judicial action, which can be commenced in any court of competent jurisdiction. N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8–502(a). These paths of review are "mutually exclusive." *Williams v. City of New*

*York*, 916 F. Supp. 2d 517, 520–21 (S.D.N.Y. 2013).  Therefore, "once an individual brings a

discrimination claim before the NYSDHR, she is barred from pressing the same claim under the

NYSHRL or the NYCHRL in state or federal court unless the NYSDHR has dismissed [the

claim] on the grounds of administrative convenience, on the grounds of untimeliness, or on the

grounds that the election of remedies is annulled."  *Clemmer v. Fordham Bedford Cmty. Servs.*,

No. 14 CIV. 2343 (AT)(JLC), 2015 WL 273657, at *4 (S.D.N.Y. Jan. 16, 2015) (internal

quotation marks and citation omitted).  A plaintiff who brings a case before the NYSDHR may

appeal only to the New York Supreme Court.  *York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122,

127 (2d Cir. 2002) (citing N.Y. Exec. Law § 298).

　　　　"Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the

complainant lodges a complaint with *either* the [NY]SDHR or the [NYCCHR]."  *Higgins v. NYP*

*Holdings, Inc.,* 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (emphasis in original).  "The election

of remedies bar is jurisdictional;" a complaint that previously has been dismissed by the

NYSDHR or NYCCHR must be dismissed for lack of subject matter jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(1).  *Id.*  "The election of remedies bar also precludes

consideration of any claim—whether brought under the NYSHRL or the NYCHRL—arising out

of the same incident on which [the plaintiff's] [NY]SDHR complaint was based." *Id.* at 188.

　　　　Because the NYSHDR investigated and dismissed Bien-Aime's discrimination and

retaliation claims, Bien-Aime is precluded from pursuing in federal court his NYSHRL and

NYCHRL claims, which are based on the same set of facts alleged in the NYSHDR complaints.

*See Higgins*, 816 F. Supp. 2d at 188 ("When the [NYSDHR] has issued a finding of no probable

cause . . . plaintiff's claims . . . are barred by the law's election of remedies provision because

plaintiff has already litigated the claims before the [NYSDHR]." (internal marks and citation

omitted)).  Therefore, Plaintiff's NYSHRL and NYCHRL claims are dismissed with prejudice

for lack of subject matter jurisdiction.

II.    **ADA Claims**

Title I of the ADA prohibits discrimination against a qualified individual on the basis of

disability with regard to the "terms, conditions, and privileges of employment."  42 U.S.C. §

12112(a).  ADA discrimination claims are subject to the burden-shifting analysis established by

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

> In accordance with this familiar standard, to establish a prima facie
> case under the ADA, a plaintiff must show by a preponderance of
> the evidence that: (1) his employer is subject to the ADA; (2) he
> was disabled within the meaning of the ADA; (3) he was otherwise
> qualified to perform the essential functions of his job, with or
> without reasonable accommodation; and (4) he suffered adverse
> employment action because of his disability.

*McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (internal marks and citations

omitted).

Plaintiff contends that he was discriminated against in violation of the ADA because

Defendants failed to accommodate his disability and retaliated against him for filing the

NYSDHR complaint.  Defendants move for summary judgment, arguing Plaintiff cannot

establish the third and fourth elements of the prima facie case.  For the reasons discussed below,

the Court agrees with Defendants relative to Plaintiff's ADA discrimination claims but disagrees

relative to Plaintiff's ADA retaliation claim.

1.    Discrimination Claim

a.    Reasonable Accommodation

"Discrimination in violation of the ADA includes, *inter alia*, not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability."  *Sheng v. M&TBank Corp.*, No. 14-4467-CV, 2017 WL 443641, at *6 (2d Cir.

Feb. 2, 2017) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir.

2009)).  "A plaintiff makes out a prima facie case of disability discrimination arising from a

failure to accommodate by showing each of the following: (1) [P]laintiff is a person with a

disability under the meaning of the ADA; (2) an employer covered by the statute had notice of

his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions

of the job at issue; and (4) the employer has refused to make such accommodations."  *Id.*

A "reasonable accommodation" under the ADA may include "modification of job duties

and schedules, alteration of the facilities in which a job is performed, acquisition of devices to

assist the performance of job duties, and, under certain circumstances, reassignment to a vacant

position."  *McBride*, 583 F.3d at 96 (quotation marks omitted).  "The plaintiff bears the burdens

of both production and persuasion as to the existence of some accommodation that would allow

her to perform the essential functions of her employment, including the existence of a vacant

position for which she is qualified."  *Id*.

Bien-Aime has failed to adduce any evidence tending to show that there exists an

accommodation that would allow him to perform the essential functions of his employment.

When pressed during his deposition, Bien-Aime failed to identify any accommodation that

would allow him to work at Equity.  Pl. Tr. at 161:6–15.  In fact, Bien-Aime testified that even if

Equity provided him with a reasonable accommodation, he would not be able to perform his job

duties.  Pl. Tr. at 160:6–10 (Q: "Even with a reasonable accommodation, could you perform the

job duties at Equity?" A: "No, no.").[7]  Indeed, the undisputed record reflects that Equity tried to

---

[7]      Although such conclusory "layperson testimony is not dispositive of the legal question," *see Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 618 F. Supp. 2d 280, 295 (S.D.N.Y. 2009), the Achilles heel for Bien-Aime's failure-to-accommodate claim is that Bien-Aime has not identified *any* accommodation that would allow him to return to work.  Without *some* evidence tending to show an accommodation that would allow the employee to do his job, no rational juror can find that Bien-Aime suffered disability discrimination arising from Equity's failure to provide the unidentified accommodation.

accommodate Bien-Aime by reassigning job responsibilities that required kneeling, but that, notwithstanding those efforts by Equity, Bien-Aime still cannot return to work.  Pl. Tr. at 124:5–9, 159:18–161:15; Novich Ex. F.  Because Bien-Aime has presented no evidence that he can perform the essential functions of his job with reasonable accommodation, let alone evidence that Defendants failed to provide that accommodation, Bien-Aime has not shown that there is a material question of fact as to this element of the prima facie case of ADA discrimination.

b.  Adverse Employment Action

To make out a prima facie case of ADA employment discrimination, the plaintiff also must show that he suffered an "adverse employment action" that "took place under circumstances giving rise to an inference of discrimination."  *Davis v. N.Y. City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (*per curiam*) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  "To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to the terms and conditions of employment.  It must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (quoting *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)); *see also Caskey v. Cty. of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014).  There is "no bright-line rule to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination."  *Davis*, 804 F.3d at 235.  "Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  *Sanders*, 361 F.3d at 755

11

(quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)); *see also Caskey*, 560 F. App'x at 59 (citing *Sanders*).

Bien-Aime has failed to adduce any evidence tending to show that Equity took an adverse employment action against him because of his disability. The undisputed record reflects that Bien-Aime did *not* suffer any change in the terms and conditions of his employment: he was never discharged or demoted, his job title and benefits never changed, his schedule was not changed, and his hours and pay were not reduced. Pl. Tr. at 151:5–7, 157:9–21. Bien-Aime asserts in his Opposition that, after he first started having problems with his knees in April 2013, Sec increased his work load, Opp. at 1, but Bien-Aime fails to offer any record evidence to support that assertion.[8] Bien-Aime was given notice of the requirement to provide evidence in his opposition to Defendants' motion for summary judgment, and he was cautioned that witness statements needed to be in the form of affidavits. Rule 56.2 Notice to *Pro Se* Litigants Opposing Summary Judgment, Dkt. 36. Because he has failed to offer any evidence tending to show that he suffered an "adverse employment action," and the undisputed record reflects that he did *not* suffer any changes to the terms and conditions of his employment, his claim that he was discriminated against because of his disability fails.

---

[8]       Bien-Aime makes various additional unsworn assertions in his submissions. For example, Bien-Aime asserts that Sec "always gave [him] the filthiest apartment to clean" and that he "shove[led] the snow" despite his sore knees. Opp. at 1–2. In the Complaint, Bien-Aime alleges that certain of that his co-workers did not speak to him, that he has "more work[] than the other guys," and that he did not receive a raise in 2002. Compl. at 3. Bien-Aime's failure to adduce any record evidence in support of these assertions is fatal to his claims. Moreover, even if the Court were to accept those assertions as true and view them to be adverse employment actions, Bien-Aime has failed to demonstrate how those actions were connected to his disability. *See McMillan*, 711 F.3d at 125 (to establish an ADA discrimination claim, plaintiff must show that he "suffered adverse employment action because of his disability").

          In addition, Bien-Aime submitted several unsworn letters after the close of summary judgment briefing in an attempt to continue arguing his case. These letters are largely repetitive of the Opposition letter, and, in any event, they also contain only unsworn assertions without any citations to evidence in the record. *See Weltz v. City of N.Y.*, No. 99 CIV. 3932 (RCC), 2004 WL 1907309, at *5 (S.D.N.Y. Aug. 25, 2004) (unsworn letters are inadmissible hearsay and need not be considered by the Court in ruling on a summary judgment motion).

Because Plaintiff has not demonstrated that there is a genuine issue of material fact as to his claim of discrimination on the basis of his disability, the Court grants the Defendants' motion for summary judgment relative to Plaintiff's ADA discrimination claim.

2.  Retaliation Claim

Plaintiff's ADA retaliation claim, however, requires a different analysis.  Title IV of the ADA prohibits an employer from retaliating against an employee for engaging in ADA-protected activity.  42 U.S.C. § 12203.  To establish a prima facie case of retaliation under the ADA, the plaintiff "must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted).

The Second Circuit has construed "adverse employment action" to be broader for retaliation claims than for discrimination claims.  *Acheampong v. N.Y. City Health & Hosps. Corp.*, No. 11CV9205-LTS-SN, 2015 WL 1333242, at *12 (S.D.N.Y. Mar. 25, 2015).   In the context of an ADA retaliation claim, an adverse employment action is an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 90 (2d Cir. 2010) (quoting *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir. 2010)); *see also Noon*, 2013 WL 6504410, at *15.[9]

---

[9]      In *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53 (2006), the Supreme Court distinguished between the substantive discrimination and retaliation provisions of Title VII and held that, for a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  548 U.S. at 68.  "Although this definition was developed in the context of Title VII retaliation claims, the Second Circuit has also applied it in evaluating ADA retaliation claims."  *Acheampong*, 2015 WL 1333242, at *12 (citing *Ragusa v. Malverne Union Free Sch. Dist.,* 381 F. App'x 85, 90 (2d Cir. 2010)); *Noon*, 2013 WL 6504410, at *15.

In support of his retaliation claim, Bien-Aime offers the following evidence: Eichinger "stopped saying good morning" to him; Sec "totally change[d]" in the way he spoke to him and spoke to him without a "warm welcome" in his voice; Sec continually monitored him at work; Sec asked him about two instances in which he incurred employee overtime without prior approval; and Sec and Eichinger talked to him like he was a criminal.  Pl. Tr. at 139:1–8, 143:18–144:22, 147:25–148:1, 157:2–8, 177:22–24.[10]  Defendants argue that such actions are "petty slights or trivial inconveniences" that are not actionable as adverse employment actions. Although the Court agrees that it is a close question, whether Sec and Eichinger's different and arguably hostile treatment of Bien-Aime would "dissuade a reasonable worker from making or supporting a charge of discrimination" is a genuine issue of disputed fact that must be resolved at trial.  When considering the record in the light most favorable to Bien-Aime, as the Court must, a rational juror could find that Sec and Eichinger's negative treatment of Bien-Aime after he filed the NYSDHR complaint could dissuade a reasonable worker from complaining of discrimination. Accordingly, the Defendants' motion for summary judgment relative to the ADA retaliation claim is denied.

---

[10]  In the conversation in which Sec and Eichinger talked to Plaintiff like he was a criminal, they informed Ben-Aime that his work schedule would be "affected" so that they could reassign Bien-Aime's job responsibility of cleaning the elevator track, which required kneeling.  Pl. Tr. at 150:8–151:20, 178:16–179:7.  The task of cleaning the elevator track ultimately was reassigned to another employee, although it does not appear that his work schedule was ever changed.  Pl. Tr. at 124:5–9.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  All claims are DISMISSED except for the ADA retaliation claim.

The parties are directed to appear for a status conference on **March 17, 2017 at 10:00 a.m.**, in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY 10007, to set a trial date in this case.

In addition, the Court wishes to inform Plaintiff regarding a useful resource that he may want to access.  A new legal clinic recently opened in this District to assist parties in civil cases who do not have lawyers.  The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court (and, among other things, therefore cannot accept filings on behalf of the Court, which must still be made by any unrepresented party through the Pro Se Intake Unit).  The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL22, which is just inside the Pearl Street entrance to that Courthouse.  The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed.  An unrepresented party can make an appointment in person or by calling 212-659-6190.

The Clerk of Court is respectfully directed to close Docket No. 31, mail a copy of this Opinion and Order to Plaintiff, and note mailing on the docket.

**SO ORDERED.**

**Dated:   February 22, 2017**
**           New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

15